STATE v. CHARLES CLIFFORD SWEET.[1]

December 13, 1929.

No. 27,613.

[1]Reported in 228 N. W. 337.

*E. A. Kling,* for appellant.

*G. A. Youngquist,* Attorney General, *James E. Markham,* Deputy Attorney General, and *A. J. Sullivan,* County Attorney, for the state.

HOLT, J.

Defendant appeals from the order denying a new trial after a conviction under an information charging him with abandonment of and failure to care for his minor child under G. S. 1923 (2 Mason, 1927) § 10135.

The facts necessary to state are these: The complaining witness and defendant were married in June, 1923. A daughter was born to them in May, 1924. In March, 1925, the wife obtained a divorce from defendant, and by the decree the care and custody of the child was awarded to its mother, but defendant was ordered to pay $50 per month for the child's support. In May, 1925, defendant was convicted under said § 10135 for deserting and abandoning this child and sentenced to the reformatory. He was paroled the following year. During his stay at the reformatory and also while on parole he contributed about $200 to the support of the child. After the parole terminated nothing has been contributed, unless it be the sum of $5 sent in a letter to the mother of the child Christmas, 1927.

It is claimed that the former conviction precludes another prosecution for a like offense. We think not. Convictions for violations of statutes like §§ 10135 and 10136, which cover so-called continuing

offenses, do not bar prosecution for like offenses thereafter committed. State v. Clark, 148 Minn. 389, 182 N. W. 452; State v. Wood, 168 Minn. 34, 209 N. W. 529. The duty of defendant to support the child was a continuing obligation as well under the divorce decree as in the absence of such decree. Jacobs v. Jacobs, 136 Minn. 190, 161 N. W. 525, L. R. A. 1917D, 971; Jackson v. Jackson, 168 Minn. 196, 209 N. W. 901.

Defendant contended at the trial that since by the divorce decree he had been deprived of the custody of the child he could not well be convicted of deserting or abandoning it. It would no doubt be true that had he without consent of the mother taken the child into his keeping he would have made himself liable to punishment as for contempt. Under this situation it appeals to us that the wilful failure to give the child the support ordered by the decree would be a violation of G. S. 1923 (2 Mason, 1927) § 10136, rather than of § 10135, and appropriate instructions permitting the jury to find defendant guilty accordingly were asked and refused. Error is assigned upon such refusal.

The substance of these two sections of our statutes originated in the Penal Code of 1885 as §§ 246 and 247 thereof. In subsequent compilations they have occupied the same relative positions. Section 10136 appears to aim at an offense similar in kind but of a lesser degree than the preceding section. Where, as here, the ingredient of the violation of § 10135 is an intent "wholly to abandon" the child, it is giving that term a broader meaning than permissible in criminal statutes to hold that one who has no right to take a child into his custody or care can wholly abandon the same. The Michigan statute making desertion or abandonment of wife or child a crime is not quite the same as ours, nor is there any provision similar to our § 10136; but on the proposition that a father who by a decree of divorce has been deprived of the custody of a minor child cannot be convicted of deserting or abandoning the same, the decision of People v. Dunston, 173 Mich. 368, 374, 138 N. W. 1047, 1049, 42 L.R.A.(N.S.) 1065, is quite convincing. The court said:

"And conceding that at the time charged, and to which the testimony was directed, respondent neglected or refused to provide

necessary and proper shelter, food, care, and clothing for his children, there is no proof that he at that time separated himself from, deserted, or abandoned them, within the meaning of the statute; but, on the contrary, he was apart from them, and his legal status was such that it was impossible for him to do so."

The case of State v. Lewis, 157 Minn. 250, 195 N. W. 901, is cited by the state, but it is to be noted that although Lewis had procured a divorce, the decree was silent as to the custody of the children; so his status to the children was exactly as if there had been no divorce, and their care and custody remained in him.

Although the information was under G. S. 1923 (2 Mason, 1927) § 10135, it stated facts showing a violation of the section following, and in our opinion he could be convicted only under that section since the evidence was undisputed that during the time involved the custody of the child was exclusively in the mother, from whom he was divorced. Hence within the meaning of § 10135 he could not desert or wholly abandon one whom he had no right to have the care and keeping of. There was error in refusing the requested instruction.

The conviction is set aside, the order is reversed, and a new trial is hereby granted.

WILSON, C. J. (dissenting).

The distinction between G. S. 1923 (2 Mason, 1927) § 10135, and § 10136 is that the former rests on an "intent wholly to abandon" the child, while the latter rests upon a wilful failure to furnish help. The father has a natural obligation toward his child. It is a common law duty. This statute answers as a weapon to be used where there is a subnormal sense of parental duty. It seems to me that the majority opinion is a cold and illogical doctrine, which wholly ignores the welfare of the child and enables the father to take advantage of his own wrong.

Because of the father's misconduct the wife gets a divorce, and for the same reason the custody of the child is given to the mother. This does not destroy the father's common law duty. In Spencer

v. Spencer, 97 Minn. 56, 60, 105 N. W. 483, 484, 2 L.R.A.(N.S.) 851, 114 A. S. R. 695, 7 Ann. Cas. 901, this court said:

"Upon principle, and the weight of judicial authority, we hold that the legal obligation of a father for the support of his minor children is not impaired by a decree of divorce at the suit of his wife for his misconduct, which gives the custody of the children to her, but is silent as to their support." See also McAllen v. McAllen, 97 Minn. 76, 106 N. W. 100.

In Jacobs v. Jacobs, 136 Minn. 190, 161 N. W. 525, 529, L. R. A. 1917D, 971, the husband was required to pay $15 per month toward the support of the children whose custody was awarded to the mother. The court said [136 Minn. 199]:

"The duty of the father to provide for his children continues whether he retains custody of them or not, unless the court, in some proceeding in which that question was involved and determined, has made express provision for their support of such a nature as to relieve him from liability other than therein provided. This liability is not limited or controlled by the regulations governing the allowance of alimony to the wife."

It should be so. The children are not parties to a divorce suit. They are helpless. The legislature certainly never intended to be so lenient with a culpable husband whose conduct necessitates a divorce.

In fixing the monthly payments the court merely made an uncertain monetary duty certain. To the extent of these payments it is the duty of the father to support the child. His common law duty is in full force. State v. Manley, 197 Iowa, 46, 196 N. W. 724. It is his failure to perform his common law duty for which the statute provides punishment. But here the father has shown an intention to sever the parental relation, and he has repudiated all obligations incident thereto. He has done this in a way that satisfied a jury he did it with "an intent wholly to abandon" the child. "To abandon," in my judgment, does not necessarily require a physical separation which is said is impossible when the father is

"apart" from the child. Perhaps the claim is that he cannot abandon that to which he does not have the right to legal custody. If so I cannot agree. In a case like this he presumably had an interest. He had a positive duty. To abandon is "to relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert, as a person to whom one is bound by a special relation, as of allegiance or fidelity; to quit, forsake." Webster's Dictionary. See also In re Cordy, 169 Cal. 150, 146 P. 532, 534.

The common law liability of the father to support his child is not affected by the fact that he and the mother are divorced.

Normally "abandonment" has the element of desertion which involves the father's quitting the society of his child. State v. Clark, 148 Minn. 389, 182 N. W. 452. But in a case of this character the social or personal contact has already been severed and effectuated by the order for custody in the divorce action. Otherwise absence is a material element. Personally I see no reason why a father could not be convicted under § 10135, though the child was not born when he left the mother. See Bull v. State, 80 Ga. 704, 6 S. E. 178.

Upon principle I think we should not follow People v. Dunston, 173 Mich. 368, 138 N. W. 1047, 42 L.R.A.(N.S.) 1065. There are other authorities tending to hold to the contrary. State v. Miller, 111 Kan. 231, 206 P. 744, 22 A. L. R. 788; Anno. 22 A. L. R. 795, and see cases cited on page 796; Bull v. State, 80 Ga. 704, 6 S. E. 178; Fry v. State, 36 Ga. App. 312, 136 S. E. 466.

HILTON, J. (dissenting).

I agree with this dissent.