### STATE v. ALFRED WILLIAM TOWNSEND.

108 N. W. (2d) 608.

March 17, 1961—No. 38,262.

*George M. Scott,* County Attorney, and *Douglas X. Juneau,* Assistant County Attorney, for plaintiff.

*Lewis E. Lohmann* and *Kermit A. Gill,* for defendant.

NELSON, JUSTICE.

Defendant, Alfred William Townsend, and the complaining witness, Vera Townsend, were divorced January 30, 1952, by decree of the District Court of Hennepin County. Five children had been born as the issue of their marriage, to wit: Robert William, born October 19, 1938; Richard Arnold, born March 6, 1941; Sharon Ann, born February 24, 1945; Priscilla Jane, born March 23, 1946; and Russell Scott, born May 19, 1949.

The divorce was granted on the grounds that defendant had engaged in a course of habitual drunkenness continuously for more than one year preceding the commencement of the action. In the divorce action the court also found that defendant was not a fit person to have the care of the minor children and awarded custody to the mother. It further found defendant to be able-bodied and capable of earning sufficient sums with which to adequately support the wife and the minor children and ordered defendant to pay to the wife $25 per month as support money for the minor children, payments to commence 30 days after defendant's release from the workhouse where he was incarcerated at the time.

The record indicates that Richard is married; that Robert is in St. Cloud; and that only the three younger children are living with their mother. They are named in an information charging defendant with having willfully, unlawfully, wrongfully, and feloniously deserted and failed to care for and support his said children with intent to abandon them on or about April 1, 1960, and with having ever since so continued contrary to Minn. St. 617.55.

Section 617.55 reads:

"Every parent, including the duly adjudged father of an illegitimate child and a parent who in an action for divorce or separate maintenance or in a neglect, delinquency or dependency proceeding for his or her child in Juvenile Court has been judicially deprived of the actual custody of such child, or other person having legal responsibility for the care or support of a child who is under the age of 16 years and unable to support himself by lawful employment, who fails to care for and support such child with intent to abandon and avoid

such legal responsibility for the care and support of such child; \* \* \* is guilty of a felony \* \* \*. Desertion of and failure to support a child or pregnant wife for a period of three months shall be presumptive evidence of intention to abandon or to avoid legal responsibility for the care and support of the child."

A companion statute, § 617.56, provides that every person having legal responsibility for the care or support of a child who is under 16 years of age and unable to support himself by lawful employment, who willfully fails to make proper provision for such child, is guilty of a misdemeanor.

At the request of the defendant and the state, the trial court certified to this court the following question:

"Can a father who has been convicted of wholly abandoning his children be prosecuted a second time on a similar charge where he has not resumed the performance of his parental obligations and has indicated no intention of resuming the same?"

Defendant contends that the gist of the offense with which he is charged is desertion and intent to abandon. He asserts that the desertion took place when he first left his family and has never been repeated because there has been a divorce and no resumption of a family relationship, the custody of the children having been awarded to his wife. He contends that he has not formed a new intent inasmuch as he has never resumed his parental obligations which are now defined in the divorce decree; that under present circumstances his guilt would have to be predicated on the same acts of desertion and intent to abandon as the first conviction and that to reprosecute him under this information places him in jeopardy for the same act for which he has already been convicted.

The decree entered in the divorce action divested defendant of all paternal rights. His paternal duties which survive were defined by the court in the decree and those duties could be enforced in a civil proceeding as well as by punitive proceedings for contempt. In one sense by the order of the court in the divorce action he has become primarily

liable to the court rather than to his former spouse in carrying out the obligations which that decree has imposed upon him.[1]

Penal Code of 1885, §§ 246 and 247, were aimed at offenses similar to those involved here but differed as to penalty provisions. This court held that offenses committed in violation of those statutes were continuing offenses. As to the element of intentional abandonment Mr. Commissioner Lees, in State v. Clark, 148 Minn. 389, 182 N. W. 452, stated that there might be some uncertainty as to the meaning of the statute and that possibly a father who has been convicted of wholly abandoning his child may not be prosecuted a second time on a similar charge unless he had resumed the performance of his parental obligations and had thereafter renounced them once more.[2] He further stated (148 Minn. 393, 182 N. W. 454):

"* * * We have been asked to indicate our views for the guidance of prosecuting officers, but, inasmuch as the question is not directly involved in this appeal, we prefer to express no definite opinion until the necessity for doing so arises."

In State v. Sweet, 179 Minn. 32, 228 N. W. 337, 14 Minn. L. Rev. 578, defendant was convicted, under a former statute similar to § 617.55, of the crime of failing to care for his minor children with intent to wholly abandon and avoid such legal responsibility. The wife had been awarded a divorce from her husband, the care and custody of their child, and $50 monthly for child support. Defendant

---

[1]See, People v. Dunston, 173 Mich. 368, 138 N. W. 1047, 42 L. R. A. (N.S.) 1065; State v. Coolidge, 72 Wash. 42, 129 P. 1088. Abandonment has been defined as "[t]he act of a husband or wife who leaves his or her consort willfully, and with an intention of causing a perpetual separation." 1 Bouvier's Law Dictionary, p. 3. The same author defines desertion as "[t]he act by which a man abandons his wife and children, or either of them." Id. p. 853. Mere failure to support wife is not an abandonment within the New Jersey Divorce Act. Biddle v. Biddle, 104 N. J. Eq. 313, 145 A. 639; see, Black, Law Dictionary (4 ed.) p. 14.

[2]Phelps v. State, 10 Ga. App. 41, 72 S. E. 524; Gay v. State, 105 Ga. 599, 31 S. E. 569, 70 A. S. R. 68; State v. Dunston, 78 N. C. 36; State v. Miller, 90 Mo. App. 131; see, Ex parte Nielsen, 131 U. S. 176, 9 S. Ct. 672, 33 L. ed. 118; In re Snow, 120 U. S. 274, 7 S. Ct. 556, 30 L. ed. 658.

failing to pay had been convicted of deserting and abandoning his child and sentenced to the reformatory. He was paroled the following year. During his stay at the reformatory, and also while on parole, he contributed about $200 to the support of the child but after the parole terminated nothing was contributed. In that case it was claimed that the former conviction precluded another prosecution for a like offense. This court held not, stating that the duty of the defendant to support the child was a continuing obligation as well under the divorce decree as in the absence of such decree. The court, however, held in that case (179 Minn. 35, 228 N. W. 338):

"Although the information was under G. S. 1923 (2 Mason, 1927) § 10135, it stated facts showing a violation of the section following, and in our opinion he could be convicted only under that section since the evidence was undisputed that during the time involved the custody of the child was exclusively in the mother, from whom he was divorced. Hence within the meaning of § 10135 he could not desert or wholly abandon one whom he had no right to have the care and keeping of."

The foregoing view seems to be well supported by authority. People v. Dunston, 173 Mich. 368, 138 N. W. 1047, 42 L. R. A. (N.S.) 1065; State v. Hartman (Mo. App.) 259 S. W. 513; Freeman v. State, 103 Tex. Cr. 428, 280 S. W. 1069.

It would seem clear that the view of this court in the Sweet case was that a divorce decree providing that the father contribute a certain sum to support his child, and at the same time taking away from him the custody of the child, does not relieve him from his obligation to support the child nor from criminal responsibility for failure to perform that obligation, and that defendant could have been held under § 10136 (now § 617.56) upon the facts stated in the information had that section been invoked by the prosecution.

Section 617.55 was amended by L. 1931, c. 94, undoubtedly as the result of State v. Clark, supra, and State v. Sweet, supra, so that a parent who has been judicially deprived of the actual custody of his minor child in an action for divorce can be convicted of violation of the statute.

The last amendment to § 617.55 (L. 1953, c. 71) dropped the word "wholly," which had preceded the words "to abandon."

The transcript in the instant case indicates that defendant had once been convicted of nonsupport under § 617.56 and that in August 1953 he was convicted of abandonment under § 617.55 after having failed to make the payments required by the divorce decree. It was brought out at the trial that he had at the age of 20 been convicted of driving an automobile without permission so the abandonment conviction constituted his second conviction for a felony. He was then 41 years of age and was sentenced to the state prison at Stillwater and committed August 25, 1953. He was placed on parole once in 1956, but this was revoked within 4 days because of drinking. He was again paroled July 29, 1958, but after a period of about 45 days his parole was again revoked for having left the state without permission. He was finally released under a discharge on September 29, 1959, at which time he returned to Minneapolis where he now lives.

A form dated July 14, 1960, and signed by Mrs. Townsend was introduced at the trial as an exhibit. Apparently it was a form used by workers administering aid to dependent children. One statement therein was:

"* * * I further understand that I do not have to sign a complaint for abandonment (Sec. 617.55, M. S. A. 1953) in order to qualify for any form of public aid, if the county attorney determines in his discretion that the evidence presently available is not sufficient, providing I am otherwise qualified for such public aid."

Mrs. Townsend, when questioned, stated that she signed it voluntarily but she nevertheless indicated that it was with the understanding that if she did not sign it she would not receive any support. Mr. Townsend was thereafter arrested on a charge of abandonment under § 617.55.

The matter was tried without a jury. The trial court found defendant guilty. Sentence was deferred and the case was certified to this court under § 632.10 as indicated.

Briefly stated the testimony showed that prior to his last arrest defendant lived at the Harbor Hotel located between Marquette and Second Avenue South in Minneapolis and thereafter at 108 Washing-

ton Avenue South at a transient hotel along so-called skid row; that when he first came back from prison he worked on temporary jobs secured through the Minnesota State Employment Office. The longest period of work at one job was 4 days, even though he reported to the employment office almost daily. He could only obtain common labor since he had no special skill, and at times he worked distributing handbills from house to house which would pay him $1 an hour. Defendant's testimony further shows that the most money he had made in any one week since his discharge from prison was $50 but that the total of his earnings from September 29, 1959, to January 1, 1960, only added up to $116 and some odd cents; that he was lucky if he could get 3 days of work per week; that under the circumstances he was unable to save any money even though he drank very little; that what he earned had gone for meal tickets, bus fares, hotel room, and a little bit for clothes. His testimony therefore indicates that the money he earned was spent on just bare existence. It also shows that he has a 15-percent disability in his right leg from an injury received July 8, 1949, which still causes him difficulty and affects his ability to do heavy work. Defendant admitted on cross-examination that he had done some drinking on the night of his arrest but stated that this was in company with some acquaintances from the section in which he was living. He also stated that he had worked 6 hours that day and had been paid $6. He admitted that drinking had been a problem of his in the past and that it had been one of the causes of the trouble he has had; but he said that it had not prevented him from getting jobs and that he had never lost a job because of drinking. He admitted that he had been convicted of nonsupport in the Minneapolis Municipal Court on one occasion. With reference to holding jobs in the past he testified as follows:

"Q. What is the longest time you ever held a job in your lifetime, Mr. Townsend? * * * Do you remember?

"A. Well, I worked four years for Cleveland Lumber and Wrecking Company.

"Q. Was that during your marriage?

"A. No, prior to my marriage, and I have worked about five

years for two different scrap iron firms. That was during my marriage. Then when I quit that I went in the window cleaning business for myself on my own, which I did from late in 1944 until I got injured in 1949.

"Q. From the time you were released from Stillwater on September 29, 1959, until the present time have you contributed any support for your minor children?

"A. No."

■ Section 617.55 provides that desertion of and failure to support a child for a period of 3 months shall be presumptive evidence of intention to abandon or to avoid legal responsibility for the care and support of the child. It must be clear to anyone familiar with criminal law and procedure that this statement is of no consequence. The only effect of such a presumption is to shift the burden of proof and the state cannot shift to one accused of a crime the burden of proving his innocence. See, State v. Higgin, 257 Minn. 46, 99 N. W. (2d) 902.

The conduct forbidden in § 617.56 constitutes a misdemeanor. This statute does not involve intent to abandon the child but does involve willful failure "to make proper provision for such child." The failure to furnish support to a wife or child, to be an offense under § 617.56, must have been willful. The record before us does not indicate that defendant's failure to support his children was willful or that it was coupled with an intent to desert or abandon, nor does the record reasonably permit such inference to be drawn. Neither statute is violated when the failure to support is the result of financial inability to do so if there has been a reasonable attempt to work and earn. "Willful" necessarily implies a set purpose and design. Defendant can be convicted only by proof of the doing of an act purposely, intentionally, and deliberately. Clearly, when desertion or abandonment are involved it is essential that the intent exist at the time when it is claimed the offense occurred. The recent return of the defendant from a long prison term of several years, in part accounting for a derelict existence; his inability at the time in question to obtain regular or steady work; and his physical disability are all conditions which might be shown to overcome alleged intent or willfulness. 2 Wharton, Criminal Law and Procedure, § 794.

Clearly, where the charge is desertion or abandonment under § 617.55, intent to commit the offense must be proved to sustain the conviction. The failure to provide support under § 617.56, as pointed out, must be coupled with willfulness to constitute an offense. We think the offense of nonsupport generally presupposes and is predicated on the ability to support. The state must furnish proof beyond a reasonable doubt as to every essential element involved in the crime charged. While it is claimed that the defendant is an able-bodied man, it has not been shown that under present circumstances he is possessed of sufficient funds or of sufficient opportunity or ability to earn anything but the barest means required for his own existence. Had he sufficient funds or sufficient earning power no doubt grounds would exist for instituting a prosecution under the proper statute and in all likelihood would justify a conviction if all essential elements were established by sufficient proof. Statutes in most jurisdictions, as in this one, make failure to support a child a criminal offense providing the party charged is able to supply the need and there is also intent to escape his obligations. However, the intent to abandon and the failure to support must be contemporaneous to constitute the offense charged a felony.

Whether intentional abandonment of a child can be committed by a parent who has been divested of all paternal rights, his only surviving paternal duties being defined by a decree of divorce, has not been fully considered by this court since State v. Sweet, *supra,* although § 617.55 has been amended several times in an attempt to give the terms "abandonment" and "desertion" a legal meaning beyond that in the law dictionaries and in many responsible legal authorities.

It is still possible in the instant case to proceed under § 617.56 or by punitive contempt proceedings under the original divorce decree.

■ It is almost a canon of the criminal law that no man is to be held guilty of a crime by a forced construction of a statute which brings him within its provisions when upon the letter thereof he falls wholly without its purview. State v. Shouse, 268 Mo. 199, 186 S. W. 1064.

That matter, however, does not have to be finally determined on this appeal. Certainly §§ 617.55 and 617.56 may be brought into

harmony by the legislature as originally intended, giving desertion and abandonment their proper setting and giving greater discretion to the courts in the matter of imposing heavier penalties in aggravated cases of willful failure to support under § 617.56, which is the offense most generally encountered by the courts in this field, where the custody of the child has been taken from a parent by decree of the court.

It is generally known among members of the bench and bar that a revision of the criminal code is under consideration in this state. These statutes may well be given consideration by those charged with revision studies in order that the questions that have troubled the courts may be solved through harmonizing these statutes, eliminating useless and ineffective presumptions, and providing penalties that will both legally and reasonably solve the different situations.

In the instant case, however, even though the defendant is deserving of criticism and should not escape punishment for willful failure to support his children when based upon the requisite proof, the proof before us is wholly insufficient and fails to sustain a conviction under § 617.55.

Reversed.

DELL, CHIEF JUSTICE (dissenting).
I dissent.