**In the Matter of the WELFARE OF Samantha Joe COPUS and Jeremiah James Copus, Children.**

**No. C4–84–480.**

Court of Appeals of Minnesota.

Oct. 16, 1984.

Gregory B. Schultz, Schultz & Schultz, Caledonia, for appellant.

Ross A. Phelps, LaCrescent, for respondents.

Joseph L. Hammell, Guardian Ad Litem, Caledonia, Susan M. Tice, Houston County Atty., Dept. of Social Services, Caledonia, for Dept. of Social Services.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant appeals the trial court's termination of parental rights. Appellant claims the trial court erred by taking testimony in his absence. Appellant also claims the social service agency's failure to provide him with a case plan as required by Minn.Stat. § 257.071, subd. 1 (1980) prevented the trial court from terminating his parental rights. Last, appellant contends there was not sufficient evidence to find appellant failed to correct the conditions leading to the prior determination of dependency. We reverse.

## FACTS

The marriage of Bernard Copus and Linda Copus was dissolved on September 3, 1980. Linda Copus received custody of their two children, Jeremiah and Samantha Copus. On December 30, 1980, Linda Copus was killed in a car accident. The children were determined dependent by the Houston County Court. Temporary legal custody was given to the Houston County Department of Social Services who placed the children with their maternal grandparents, Mr. and Mrs. Harvey Fiebig. Mrs. Fiebig died on November 23, 1981; the children were then placed in the foster home of Mr. and Mrs. Randy Shefelbine.

Terrence and Diane Esch, a maternal aunt and uncle who live in Texas, brought a petition to terminate appellant's parental rights on March 9, 1983. A hearing on the petition was held on June 17, 1983. Appellant did not attend this hearing because he was hospitalized. The trial court denied a motion by appellant's attorney for a contin-

uance and took testimony from several witnesses. Appellant was allowed to testify on September 14, 1983, and the court issued an order terminating appellant's parental rights on November 28, 1983.

Appellant is a veteran who served two tours in Vietnam. While in Vietnam, he was "shot once and hand grenaded twice." Appellant still suffers from his injuries and requires frequent hospitalization. Consequently, appellant has been unable to hold a regular job, and his only income has consisted of $114 per month from V.A. disability. Appellant hired an attorney to have his disability payment increased and to investigate other possible sources of financial aid. Appellant has enrolled in a G.E.D. program and may be receiving $407 per month in education benefits.

Appellant's present wife earns approximately $400 per month, and the couple live in a two bedroom apartment. Appellant and his wife do not own a car, but are thinking about getting one. Appellant never received a written case plan advising him of the specific steps he must take to overcome the trial court's finding of dependency, although a written case plan was required by Minn.Stat. § 257.071, subd. 1 (1980).

In its findings of fact, the trial court found appellant visited his children a total of seven times in 1982 and 1983, although he corresponded over 100 times. The trial court also found appellant contributed nothing towards the support of his children, owns no real property and little personal property. The court also found appellant had not been employed since 1979, has been frequently hospitalized, and has a history of chemical dependency.

The trial court reached the following conclusions of law:

1. That following a determination of dependency made by this Court on the 8th day of December 1981, the said Bernard J. Copus, Jr. made no reasonable effort as directed by the Court to correct the conditions leading to the determination of dependency.

2. That it reasonably appears that the condition of dependency will continue for a prolonged, indeterminate period.

3. That the said Bernard J. Copus, Jr. is presently unable to assume his parental responsibilities and duties.

4. That the parental rights of Bernard J. Copus, Jr. should be terminated as to his children Samantha Jo Copus and Jeremiah James Copus.

Appellant's motion for a new trial was denied.

## ISSUES

1. Did the trial court err by taking testimony from witnesses without appellant's presence?

2. Does the failure to provide appellant with a written case plan as required by Minn.Stat. § 257.071, subd. 1 (1980) require reversal of the trial court's termination order?

3. Was there clear and convincing evidence appellant failed to correct the conditions leading to the prior dependency determination?

## ANALYSIS

1. *Presence.*

■ Minn.R.Juv.P. 42.02 provides:

The absence from a hearing of a person who has the right to attend shall not prevent the hearing from proceeding provided appropriate notice has been served.

*Id.* Appellant received proper notice of the June 17, 1983 hearing. Although hospitalized for several days prior to the hearing, a request for a continuance was not made until the day of the hearing. Appellant was not prejudiced because his counsel attended the hearing and cross-examined witnesses. Additionally, respondents Terrence and Diane Esch traveled from Texas to attend the hearing. The trial court did not err by proceeding with the hearing. Minn.R.Juv.P. 42.02.

2. *Case Plan.*

■ When a child is determined dependent and placed in a foster home, a written

case plan must be furnished to the parents. Minn.Stat. § 257.071, subd. 1 (1980).

[A] case plan means a written document * * *. The document shall be explained to all persons involved in its implementation, including the child who has signed the document, and shall set forth:

(1) The specific reasons for the placement of the child in a residential facility, including a description of the problems or conditions in the home of the parent or parents which necessitated removal of the child from his home;

(2) The specific actions to be taken by the parent or parents of the child to eliminate or correct the problems or conditions identified in clause (1), and the time period during which the actions are to be taken;

(3) The financial responsibilities and obligations, if any, of the parents for the support of the child during the period the child is in the residential facility;

(4) The visitation rights and obligations of the parent or parents during the period the child is in the residential facility;

(5) The social and other supportive services to be provided to the parent or parents of the child, the child, and the residential facility during the period the child is in the residential facility;

(6) The date on which the child is expected to be returned to the home of his parent or parents;

(7) The nature of the effort to be made by the social service agency responsible for the placement to reunite the family; and

(8) Notice to the parent or parents that placement of the child in foster care may result in termination of parental rights but only after notice and a hearing as provided in chapter 260.

*Id.*

A written case plan is required in every case. *In the Matter of the Welfare of R.M.M.*, 316 N.W.2d 538, 542 (Minn.1982). The *R.M.M.* court, however, held that a failure to provide a written case plan as

required by section 257.071 was not reversible error under the facts of that case. *Id.*

In *R.M.M.*, E.A.M. was the mother of R.M.M. She was 31 years old and had a long history of chemical and alcohol abuse and instability. Over a period of ten years, she attempted suicide five times: once by trying to set herself on fire, once by hanging, twice with drugs, and once by trying to jump off a bridge in downtown St. Paul. E.A.M. had voluntarily terminated her parental rights to her first three children. E.A.M. would leave R.M.M. alone and unattended for long periods of time. She admitted abandoning R.M.M. and requested that her parental rights be terminated on several occasions. *Id.* at 539.

At the termination hearing, E.A.M.'s psychiatrist testified R.M.M.'s physical and emotional health would be jeopardized if placed with E.A.M. E.A.M. rejected efforts by social service workers to solve her chemical dependency problems because she "wanted to drink some more." *Id.* at 540.

In this matter, the trial court found the lack of a case plan was not fatal because the Houston County Department of Social Services kept an active file and encouraged appellant to take a more active role in resuming normal parental contacts with his children. The trial court held "the facts of this case fall within the exception stated in Matter of R.M.M."

This matter is distinguishable from *R.M.M.* The extreme circumstances in *R.M.M.* do not exist in this case. The main problem in this matter is the frequency of appellant's visitation with his children. Appellant sent numerous cards to his children (about 115) over the last two years. Appellant has serious medical problems which have, in turn, created financial and transportation difficulties.

The purpose of Minn.Stat. § 257.071, subd. 1 is to give parents written guidelines for correcting the conditions leading to the determination of dependency. 316 N.W.2d at 542. In *In re Welfare of Barron*, 268 Minn. 48, 127 N.W.2d 702 (1964), the Minnesota Supreme Court stated:

Implicit in the statutes is the policy that whenever possible the family relationship should be strengthened and preserved. * * * An involuntary termination of the [parental] relationship in cases of dependency and neglect should be ordered only where the other statutory remedies have failed.

*Id.* at 53, 127 N.W.2d at 706.

In *R.M.M.*, it was clear the mother would not be aided by a written case plan. Here the main problem is visitation, and a written case plan would provide appellant and his wife a clear indication of their rights, obligations, and the actions necessary to gain custody of appellant's children. Appellant should have been provided a written case plan before his parental rights were terminated. Minn.Stat. § 257.071, subd. 1 (1980); *see R.M.M.*, 316 N.W.2d at 542.

### 3. *Clear and Convincing Evidence.*

 There must be clear and convincing evidence that one or more of the conditions set forth in Minn.Stat. § 260.221 (1982) exist before a parent's rights can be terminated. Minn.Stat. § 260.241, subd. 1 (1982); *see In the Matter of the Welfare of Rosenbloom*, 266 N.W.2d 888, 889 (Minn. 1978). Parental rights may not be terminated solely on the ground that it is in the best interests of the child to do so. There must be "sufficient evidence that a specific statutory ground for termination exists." *In the Matter of the Welfare of Solomon*, 291 N.W.2d 364, 367 (Minn.1980).

The legislature, by requiring a case plan under Minn.Stat. § 257.071, subd. 1, set a standard upon which a court must look when terminating a parent's rights. In the absence of this written case plan, however, the clear and convincing evidence required to terminate a parent's right will rarely be present. *E.g., R.M.M.*, 316 N.W.2d 538. The compelling circumstances found in *R.M.M.* are not present here.

Although there may have been grounds to terminate appellant's parental rights if a statutory case plan were not required, the importance of the family unit in our society requires the government to provide a case plan in every case. We remand so that Houston County Department of Social Services can fulfill its statutory responsibility.

### DECISION

The trial court properly heard testimony without appellant's presence. The trial court erred by terminating appellant's parental rights because appellant was not provided a written case plan as required by Minn.Stat. § 257.071. We direct the trial court to oversee the preparation of a written case plan giving appellant no longer than 12 months to comply with its terms.

Reversed and remanded.