STATE v. DORA COHEN, ALIAS MRS. SBROE.[1]

December 20, 1935.

No. 30,546.

[1]Reported in 263 N. W. 922.

40

*Frank J. Collins,* for appellant.

*Harry H. Peterson,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *Ed J. Goff,* County Attorney, *William G. Compton,* Assistant County Attorney, and *Dwight N. Johnson,* for the State.

HOLT, JUSTICE.

Defendant was charged and convicted of the crime of grand larceny in the second degree and appeals from the judgment.

The main assignment of error is that the verdict is not supported by the evidence and that it is contrary to law. There is evidence from which the jury could find substantially as follows: In November, 1934, defendant owned a Hudson seal fur coat which needed certain alterations and repairs, such as to be made longer, more ample in girth, and new lining and a new collar. Her husband engaged one Mellon, a furrier, to do the work and furnish the materials needed for $50. In the negotiations the husband represented that the owner of the coat was a customer by the name of Mrs. Sbroe. When the work was done Mellon and his brother made efforts to deliver the coat and get the money. Defendant found fault with the way the alterations were made. At one time when Mellon's brother took the coat to her home and demanded the money she wanted to keep the coat, but at last surrendered possession when he told her he would be held responsible. Finally, on January 2, 1935, Mellon took it to her home for the fourth time and

requested payment. She tried the coat on, thought it was too long, and stated she desired to go back in her apartment where there was a long mirror to see how it looked. She went back but returned without the coat, and when Mellon demanded the coat or his money she told him he could have neither. A detective and Mellon's lawyer were called and came. Defendant refused to tell what she had done with the coat. The apartment was searched, but the coat was not found there. On the trial she gave this testimony concerning the matter:

Q. "Where did you take the coat?
A. "Well, it is my coat. Can't I do anything I want?
Q. "I am asking you where you took it?
A. "I don't know where I took it. It was in the house.
Q. "Where in the house?
A. "I don't know; around the house.
Q. "In your house, in your flat?
A. "Yes.
Q. "Where?
A. "Well, what do you mean where?
Q. "Don't you know what 'where' means? Where did you put it?
A. "Well, I did not have it in the house.
Q. "Where did you take it?
A. "I just took it.
Q. "Where?
A. "I locked it up in the closet."

This kind of testimony continued for some time without divulging where she took the coat. The next day it was in the possession of a downtown store, where it was kept until the trial. The jury could well conclude that from the start defendant and her husband planned to obtain the work and labor on the coat and repossess it without paying therefor. The jury was well justified in not believing a witness who thus evades and contradicts herself upon a matter of which she could not be ignorant. She got possession of the coat by subterfuge and fraud and carried it away and concealed it. We think she could be found guilty. Her felonious intent to deprive Mellon of his lien is apparent from her actions.

The verdict is not contrary to law. A person may be guilty of larceny of his own property if taken from the possession of one who has a lien thereon under which possession may lawfully be retained until the lien is discharged. Sections 8507 and 8508, 2 Mason Minn. St. 1927, gave a possessory lien to Mellon, and the way defendant procured the coat to see how it looked on her person does not, as a matter of law, bring her within the protection of 2 Mason Minn. St. 1927, § 10372. On the contrary, the jury had warrant for finding that defendant's scheme of trying on the coat and disappearing with it was with the felonious intent of depriving Mellon of his lien and his right of possession until the lien was discharged. An owner of personal property may be found guilty of larceny thereof when he wrongfully takes it from a pledgee or from one whom he has given possession for the purpose of having it cared for or repaired under statutes such as ours giving a lien therefor and the right to retain possession until the lien is paid. State v. Hubbard, 126 Kan. 129, 266 P. 939, annotated in 58 A. L. R. 330, 331, where the authorities are cited and this conclusion therefrom is stated:

"If personal property in the possession of one other than the general owner by virtue of some special right or title is taken from him by the general owner, such taking is larceny if it is done with the felonious intent of depriving such person of his rights, or of charging him with the value of the property."

It is also claimed that the verdict is contrary to law in that the information stated that the coat was the property of Mellon, and the proof was that he had a special ownership or possessory lien thereon. We do not consider the variance fatal. Without raising the objection of variance, the proof went in that defendant caused the coat to be delivered to Mellon for alteration and repair at the stipulated price of $50. The following cases support the action of the court in refusing to direct a verdict of not guilty at the close of the testimony on the ground of variance; State v. Clapper, 59 Iowa, 279, 13 N. W. 294; State v. Pettis, 63 Me. 124; State v. Brown, 72 N. J. L. 354, 60 A. 1117. It undoubtedly would have been better

practice to have so drawn the information as to have laid special ownership instead of general in Mellon.

At the trial evidence was adduced as to the value of the skins that Mellon used in repairing the coat, and in the brief here defendant claims that the value of the lien is such that defendant was entitled to have petit larceny submitted. There was no request to submit such an issue to the jury, and defendant cannot now claim reversible error in the failure to submit petit larceny. State v. Jenkins, 171 Minn. 173, 213 N. W. 923, and cases therein cited.

Defendant complains of the ruling excluding evidence of an expert that the material and labor which Mellon expended in making the agreed alterations and repairs on the coat did not enhance its value. We think the ruling right. Defendant was permitted to testify as to her opinion of Mellon's work; that it ruined the coat instead of enhancing its value; that she thought he had substituted inferior fur for that which was in the coat when delivered to him; and that she took possession because she was afraid the value of the coat would be utterly destroyed. All this properly went to disprove felonious intent. But we think the amount of Mellon's lien was not an issue that could be litigated in this case. It was not between the proper parties. The quantum of proof is not the same in this criminal case as it would be in an action between Mellon and defendant either to establish or defeat a lien. We take it that in this prosecution the only value in issue was the value of the coat which defendant feloniously took and concealed. Mellon was entitled to the possession of the entire coat until his lien was determined in a lawful manner. And defendant was not entitled to have the amount of Mellon's possessory lien determined in this criminal case. It was conceded that possession of the coat had been given by her to Mellon in order that he might alter and repair it at an agreed price.

Other assignments of error are made. They have been examined, but we do not consider them of sufficient merit to note in this opinion.

The conviction is affirmed.