## STATE v. WILLIAM NUSER.[1]

February 26, 1937.

No. 31,070.

*William P. Murphy,* for appellant.

*William S. Ervin,* Attorney General, *Roy C. Frank,* Assistant Attorney General, and *Harry E. Burns,* County Attorney, for the State.

HILTON, JUSTICE.

After having been convicted of second degree grand larceny, defendant appealed from the judgment of conviction.

Summarizing the evidence, it appears that on or about August 2, 1934, the defendant approached one Mike Wernig, a party he had

[1]Reported in 271 N. W. 811.

met on one or two previous occasions, and asked for a loan of $200. This Wernig agreed to make upon the defendant's furnishing proper security. Defendant then produced an unmounted diamond supposedly of considerable value and offered to pledge it. Wernig and defendant went to a jeweler to have it appraised. It was found to be worth $580. There was testimony from which it could readily be found that after the appraisal had been made the jeweler laid the gem on the counter; the defendant took it, went through what appeared to be the motions of wrapping it up, and then handed the package to Wernig. The $200 was paid to defendant, and Wernig, without again examining the diamond, put it in his safety deposit box in a local bank.

About a week later defendant returned and borrowed another $100 from Wernig on the strength of the security theretofore given. Several months thereafter Wernig wrote to defendant demanding that the latter pay the debt, but received no answer. Wernig then went to his safety deposit box, unwrapped the package, and found that the stone inclosed therein was not the diamond that had been appraised by the jeweler, but was a sapphire worth not over $4.50.

Undeniably, as pointed out by defendant's counsel, actionable fraud cannot be based on mere assertions of value or "puffing," see State v. Sack, 179 Minn. 502, 229 N. W. 801. However, the alleged violation here is not bottomed on such a claim but rather on the charge that the defendant obtained the $200 by false pretense, the real gist of the violation. See State v. Taran, 176 Minn. 175, 222 N. W. 906.

Principally assigned as error is the claim that although the state attempted to prove larceny by trickery or false pretense there was no allegation in the indictment under which any evidence thereof could properly be admitted. It is claimed that the court erred in allowing such evidence. Undoubtedly an indictment should be so worded as to charge the particular offense of which complaint is made against the defendant (State v. Henn, 39 Minn. 464, 40 N. W. 564) in order that the accused will be apprised of the nature of the charge, State v. Nelson, 74 Minn. 409, 77 N. W. 223; State v.

Fitchette, 88 Minn. 145, 92 N. W. 527. However, that was sufficiently done here.

On the evidence it appears that defendant pretended to deliver to Wernig a valuable diamond as security for a loan, but in reality, by trickery, substituted therefor a practically worthless stone. Although it was necessary for the state to show that the defendant, by indulging in trickery, perpetrated the offense charged, the actual crime was his falsely pretending to hand over adequate security. The indictment sufficiently set forth that the larceny consisted of false pretense for it alleged that defendant "falsely pretended and represented" that he would "leave with one Mike Wernig to whom said representations were made" a valuable diamond; "that said Mike Wernig relied on the representations of said William Nuser and accepted as security for the loan what William Nuser had represented to him as being a genuine and true valuable diamond." Thus there is the allegation that the defendant represented he would leave with Wernig such a valuable diamond. To portray the transaction in full, *i. e.,* that the representations were false and that no valuable diamond was left with Wernig, it was proper to allow evidence of the scheme used by the defendant to accomplish his fraudulent purpose. The method employed was only secondary to the purpose in mind. The state cannot be expected to draft such an indictment as would disclose all of its evidence. The obtaining of money by false pretense is specifically alleged in the indictment. It was the delivery of the package supposedly containing a valuable diamond (that resulted in the loan) which was the false representation. The trick of not placing the diamond in the package, as pretended, merely was an incident of the offense. It was only a circumstance and an evidentiary one of the entire and perfected scheme. Therefore it was not an indispensable allegation of the indictment.

To constitute the crime of obtaining money by false pretense there need only be reliance on a false representation of a past or existing fact, made by the accused with knowledge of its falsity and with intent to deceive and defraud, which is adapted to deceive the

person to whom it is made and an actual defrauding in obtaining something of value by the accused without compensation to the person from whom it is obtained. State v. Anderson, 159 Minn. 245, 199 N. W. 6, 7; see 2 Mason Minn. St. 1927, § 10358. That was exactly the situation here. The indictment, although not exemplary, was amply sufficient to apprise defendant of the charge against him. A new trial should be granted only in those cases where the "substantial rights of the accused have been so violated as to make it reasonably clear that a fair trial was not had." State v. Nelson, 91 Minn. 143, 97 N. W. 652. Here it appears one was had. The indictment complained of is not one in which the commission is charged by a specific means and the evidence shows its commission by an entirely different means. Cf. State v. Vorey, 41 Minn. 134, 43 N. W. 324.

It is urged that the evidence was not sufficient to support the conviction. If the testimony of Wernig is believed, and apparently it was, there can be no doubt but that the defendant was guilty of the act charged. He admitted the loan as well as the appraisal. There is corroboration for Wernig's testimony that the stone appraised was not the one Wernig claimed he found in the package upon opening it. No one actually saw the "switch," but certainly the circumstantial evidence was such that the jury was warranted in believing that the defendant made one. That being true, it would follow that he obtained the money by false pretense.

The suggestion that the diamond may have been replaced with the sapphire sometime after the former came into the hands of Wernig is without force, for there is absolutely no evidence which would even warrant a speculation to that effect.

Certain questions of the county attorney made while cross-examining the defendant carried insinuations that the defendant had done this sort of thing at other times. The remarks, although improper, were not prejudicial. They were few and not of the nature that would have incited the passion or prejudice of the jurors.

· Affirmed.

Mr. Chief Justice Gallagher, not having been a member of the court when this case was argued and submitted, and Mr. Justice

PETERSON, having been attorney general when the appeal was taken, took no part in its consideration or decision.

MR. JUSTICE STONE took no part in the consideration or decision of this case.